CLAWSON L. THOMPSON, EMPLOYEE v. REFRIGERATED TRANSPORT CO., INC., EMPLOYER; MIDLAND INSURANCE CO., CARRIER

No. 7610IC709

(Filed 6 April 1977)

1. Master and Servant § 49— truck leased to ICC franchise holder — owner-operator employee of lessee

    An owner-operator of a truck leased to an Interstate Commerce Commission franchise holder is the employee of the lessee within the meaning of the N. C. Workmen's Compensation Act.

2. Master and Servant § 56— workmen's compensation — injury during job preparations — injury compensable

    Preliminary preparations by an employee which are reasonably essential to the proper performance of some required job are generally regarded as being within the scope of employment, and any injury suffered during such preparations is compensable.

3. Master and Servant § 56— workmen's compensation — employee preparing for work — accident arising out of and in course of employment

    Evidence was sufficient to support findings of the Industrial Commission that plaintiff leased two trucks to defendant employer, plain-

tiff was required to present one of his trucks in Greensboro in condition to make a trip to San Francisco which had been offered to plaintiff and which he had accepted, and at the time of his injury plaintiff was furthering the business of his employer in that he was preparing the truck to make the journey for his employer, and such findings supported the Commission's conclusion that plaintiff's injuries arose out of and in the course of his employment.

4. **Master and Servant § 93— workmen's compensation — award by hearing commissioner — award changed by Commission**

The Industrial Commission did not err in substituting an award of $800 for a 5% permanent partial disability to plaintiff's hand for the hearing commissioner's award of $400 for serious bodily disfigurement, since the Commission has authority to review, modify, adopt or reject the findings of fact found by a hearing commissioner.

Judge VAUGHN dissents.

APPEAL by defendants from an opinion and award of the North Carolina Industrial Commission dated 3 June 1976. Heard in Court of Appeals 9 February 1977.

This is a proceeding brought by the plaintiff, Clawson L. Thompson, under the North Carolina Workmen's Compensation Act to recover compensation allegedly resulting from an injury by accident on 19 July 1975.

After a hearing the Industrial Commission made findings of fact, which, except where quoted, are summarized as follows:

On 19 July 1975 plaintiff employee, owned two diesel trucks, both of which were leased to the defendant employer, Refrigerated Transport Co., an "Interstate for Hire Common Carrier, operating under a Certificate of Public Convenience and Necessity issued by the Interstate Commerce Commission," under a "contractor operating agreement" or term lease. Under the agreement plaintiff was required to maintain the trucks at his own expense in the state of repair required by "all applicable regulations." He was also responsible for all operating expenses. The plaintiff is compensated under the agreement at a specified rate per mile traveled.

"The defendant employer exercises no control over a driver in the maintenance and repair of his vehicle. However, this employer has inspection lanes at its Greensboro terminal, and before each run each vehicle is inspected by the employer there. If the vehicle passes this inspection, the employee is given the trip. If it does not, the employee is given an opportunity to

correct any minor defect on the spot, but if he cannot then pass inspection, he does not get the load."

· At 9:00 a.m. on 19 July 1975 plaintiff received a call at his home in Garner, North Carolina, from the employer's dispatcher inquiring as to whether he would accept a "run" from Greensboro to San Francisco. Plaintiff accepted the run, and he was directed to be in Greenboro at 6:00 p.m.

"At 11:00 a.m., one of the tractors was then in the driveway of his home and plaintiff began to clean and service the truck so that it would pass employer's inspection in order that he might make the San Francisco trip. . . . The work which plaintiff was performing on his tractor at the time in question was not general repair or maintenance but was preparatory cleaning and checking to prepare for a specific trip to which he had already been assigned that afternoon." Plaintiff fell while standing on a ladder securing the air conditioning lines on the truck and severely cut his arm. The Industrial Commission found and concluded that the plaintiff's injury arose out of and in the course of his employment with defendant Refrigerated Transport Co., and that as a result of the injury plaintiff was temporarily totally disabled from 19 July 1975 to 18 October 1975 and sustained a five per cent permanent partial disability of the left forearm or hand.

From the award of the Industrial Commission giving plaintiff $80 per week for thirteen weeks for his temporary total disability, and $800 for his permanent partial disability, defendants appealed.

*Joseph Reichbind for plaintiff appellee.*

*Young, Moore, Henderson & Alvis by B. T. Henderson II, and R. Michael Strickland for defendant appellants.*

HEDRICK, Judge.

[1] Defendants first contend that plaintiff's injuries did not arise out of and in the course of his employment with the defendant, Refrigerated Transport Co. While defendants concede that an owner-operator of a truck leased to an Interstate Commerce Commission franchise holder is the employee of the lessee within the meaning of the North Carolina Workmen's Compensation Act, *Brown v. Truck Lines,* 227 N.C. 299, 42

S.E. 2d 71 (1947), they assert that the plaintiff's injuries in this case did not arise out of and in the course of his employment because under *Brown* the employer-employee relationship exists only when the "drivers are transporting goods under the franchise authority of the ICC franchise holder." In substance, defendants argue that the plaintiff was an independent contractor with respect to repairs made on the tractor-trailer rig, and that under the facts of the present case he would not have come within the scope of his employment until he had reached the loading dock in Greensboro, preparatory to making the "run" to San Francisco.

. Defendants, in their brief, and Commissioner Brown, in his dissenting opinion filed in this case, cite in support of their contention that plaintiff's injuries did not arise out of and in the scope of his employment the following from *Employment Security Commission v. Freight Lines*, 248 N.C. 496, 502, 103 S.E. 2d 829, 833-34 (1958):

> "In the decisions cited in the two preceding paragraphs, it was held that the operator (whether the owner or his employee) while operating the leased equipment in furtherance of the business of the franchise carrier, was an employee of the franchise carrier in respect of hazards to which he and the public were subjected by reason of such operation. In such case, the interstate carrier is exercising its franchise rights by use of the services of the operator; and on this ground, and also on the ground of public policy, the interstate carrier has the liability of an employer for what occurs while the leased equipment is so operated. *However, when we deal with a matter unrelated to what occurs during the operation of the leased equipment, the status of the operator is to be determined by whether the lessor is an independent contractor under the terms of the lease agreement.*"
>
> (Citation omitted.) (Emphasis added.)

The above quotation does not support the defendants' contention. The issue before the Court in that case was clearly set out by Justice Bobbitt (later Chief Justice) at the beginning of his opinion,

> "The question for decision is this: Are drivers of vehicles so leased [trip lease to ICC franchise holder] (whether the

owner or a third party employed by him), during the term of the lease, employees of Hennis [lessee] or are they independent contractors or employees of independent contractors, under the Employment Security Law?"
*Id.* at 499, 103 S.E. 2d at 832.

The status of the operator-lessor in the above cited case was determined by whether he was an independent contractor under the terms of the lease simply because the issue before the court was whether he was an "employee" within the meaning of the Employment Security Act, "a matter unrelated to what occurs during the operation of the leased equipment." In the present case it is clear that the plaintiff was the employee of the defendant Refrigerated Transport Co. within the meaning of the Workmen's Compensation Act. *Brown v. Truck Lines, supra.* Whether the injury for which he seeks compensation arose out of and in the course of his employment is to be determined as in any other case.

**[2]** "Preliminary preparations by an employee, reasonably essential to the proper performance of some required task or service, is generally regarded as being within the scope of employment and any injury suffered while in the act of preparing to do a job is compensable." Blair, Workmen's Compensation Law § 9:32 (1974). See also *Battle v. Electric Co.*, 15 N.C. App. 246, 189 S.E. 2d 788 (1972), *cert. denied*, 281 N.C. 755, 191 S.E. 2d 353 (1972); *Giltner v. Commodore Contractor Carriers*, 14 Or. App. 340, 513 P. 2d 541 (1973); *Employers Mutual Liability Ins. Co. v. Department of Industry, Labor & Human Relations*, 52 Wis. 2d 515, 190 N.W. 2d 907 (1971); *Harding v. Herr's Motor Express, Inc.*, 35 App. Div. 2d 883, 315 N.Y.S. 2d 693 (1970), appeal denied, 28 N.Y. 2d 487, 322 N.Y.S. 2d 1026 (1971). In the last cited case the New York court held compensable an injury suffered by an employee, who had leased his truck-tractor to the defendant employer, while performing repairs or maintenance work on the vehicle at his home in preparation for operating it in his employment as scheduled for later the same day.

**[3]** In the present case, plaintiff accepted the offer of a job to make the "run" from Greensboro to San Francisco. Part of the duties of plaintiff's employment was to present the tractor-trailer rig in Greensboro in condition to make the trip. Indeed, if the rig did not pass the employer's inspection, plaintiff would

not get the job in question. At the time of his injury plaintiff was furthering the business of his employer in that he was preparing the rig to make the journey to San Francisco for his employer. We hold that the Commission's findings support the conclusion that plaintiff's injuries arose out of and in the course of his employment with defendant Refrigerated Transport Co.

Based on assignment of error 4, defendants contend,

"[T]he bare assertion by the employee-appellee that he was temporarily totally disabled is not sufficient to establish the fact of disability or the length of disability and that the findings of the Industrial Commission as to temporary total disability are not supported by competent evidence in the Record."

In appropriate circumstances the extent and period of disability may be established in the absence of medical testimony with respect thereto. 3 Larson, Workmen's Compensation Law § 79.51 (1976). However, in the present case the Commission's finding that plaintiff was totally disabled for thirteen weeks is supported not only by plaintiff's testimony, but also by the medical records and physicians' reports showing the nature and extent of his injury. This assignment of error has no merit.

[4] Finally defendants contend the Commission erred in substituting an award of $800 for a five per cent permanent partial disability to plaintiff's hand for the hearing commissioner's award of $400 for serious bodily disfigurement. Defendants argue that the amendment is erroneous because the plaintiff did not appeal from the award of the hearing commissioner. We disagree.

The Commission is the fact finding body under the Workmen's Compensation Act and has authority ". . . to review, modify, adopt, or reject the findings of fact found by a Deputy Commissioner or by an individual member of the Commission when acting as a hearing Commissioner." *Brewer v. Trucking Co.,* 256 N.C. 175, 182, 123 S.E. 2d 608, 613 (1962). The assignment of error upon which this contention is based has no merit.

We hold the material findings of fact made by the Commission are supported by competent evidence in the record, and

these findings support the pertinent conclusions of law, which in turn support the award. The order appealed from is

Affirmed.

Judge CLARK concurs.

Judge VAUGHN dissents.